UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STEVE HILL,<br><br>　　　　　Defendant. | Case No. 2:20-cr-00031-APG-DJA<br><br>**ORDER** |

　　　　This matter is before the Court on Defendant Steve Hill's Emergency Motion for Temporary Release Under 18 U.S.C. § 3142(i) Due to COVID-19 Pandemic (ECF No. 20), filed on April 16, 2020.  The Court ordered the Government to file a response by April 17, 2020. (ECF No. 21).  The Government timely filed its Response (ECF No. 22).  The defense filed a Reply shortly thereafter (ECF No. 23) on that same date in which they request an evidentiary hearing because they argue there are issues of fact to be resolved.  However, the Court finds this matter appropriately resolved without a hearing because there are no material issues of fact relating to the Court's decision which necessitate an evidentiary hearing.

　　　　**I.　　BACKGROUND AND PROCEDURAL HISTORY**

　　　　　　**a. Original Detention Decision**

　　　　On February 14, 2020 the United States filed a one-count criminal complaint charging Steve Hill with Felon in Possession of a Firearm in violation of Title 18 U.S.C. §§922 (g)(1) and 924(a)(2). (ECF No. 1)  The complaint alleges six (6) prior felony convictions, including two for felon in possession of a firearm, escape, trafficking in a controlled substance, possession of a controlled substance and assault with a deadly weapon.  (Id).  In short, the complaint alleges that after law enforcement received information that Hill was armed, they began to look for him and spotted his pick-up driving in the area of Pahrump, Nevada.  (Id).  After pulling Hill over for a

traffic violation, Hill was asked to step out of his vehicle and on his right hip in a holster was a Glock model 21 .45 caliber pistol equipped with a laser site. (Id). According to the complaint, the pistol was loaded with a round in chamber and Hill had two additional loaded magazines of ammunition in a carrier on his left hip. (Id). Hill was arrested and the federal criminal complaint followed.

Hill appeared before the Court for his initial appearance and detention hearing. The Government sought detention arguing that Hill was both a flight risk and a danger to the community. After hearing argument from the parties, the Court ordered Hill detained and filed a lengthy written Order of Detention. (ECF No. 11). In its Order of Detention, the Court cited among other reasons, Hill's prior criminal history, his lack of stable employment, his lack of financial responsible sureties and his prior violation of probation, parole and supervised release. (Id). Additionally, the Court provided further justification for Hill's detention in its order indicating that there were a virtual plethora of reasons to detain Hill as both a flight risk and danger to the community. (Id). Simply stated, based upon the record in this case Hill was not even a marginal candidate for consideration for release given the reasons stated in the written order of detention. (Id).

Thereafter, the Government presented this case to the Grand Jury which returned a one-count Criminal Indictment on February 25, 2020 charging Hill with Felon in Possession of a Firearm in violation of Title 18, §§922(g)(1) and 924(a)(2). (ECF No. 13). The indictment alleges these same six (6) prior felony convictions, the first of which dates back to 1993. Thus, probable cause has been found for the charge and Hill is currently awaiting trial which is scheduled for September 28, 2020. (ECF No. 19). It should be noted that the trial was set out to September, 2020 pursuant to a stipulation between the parties, including the Defendant. (Id).

### b. Temporary Release Arguments

In the instant Motion the Defendant is not reopening his detention hearing because of new information, but is requesting temporary release as a result of changed circumstances, specifically the COVID-19 outbreak. (ECF No. 20). The defense generally outlines the history and the spread of the COVID-19 virus in the United States and the State of Nevada, and describes the measures

that have been taken by this Court and other courts to address the outbreak of the COVID-19 virus. The motion also details alleged conditions of confinement, the spread of the virus, and provides an extensive breakdown of outbreaks of COVID-19 in various BOP facilities around the country. The motion further makes allegations regarding the specific conditions at Nevada Southern Detention Center (NSDC) where Hill is being held detailing what it argues are limitations on addressing the national recommendations for how to limit the spread of the virus. Defendant claims that the current conditions of confinement create an unreasonable risk of exposure to COVID-19 and that the facility does not provide the necessary personal hygiene supplies to protect him. Defendant claims that COVID-19 testing is not being offered to inmates or to him specifically and these conditions limit his ability to have contact with his attorney. Interestingly, the Defendant does not make any specific claims regarding his health conditions that would make him more susceptible to the virus, does not point to any circumstances related specifically to him that would warrant his temporary release as a result of the virus, and simply makes the blanket assertion that essentially he would be safer from the virus if released from pretrial detention.

     Specifically, the Defendant first argues that the Fifth Amendment requires his release because the pandemic presents a significant harm outweighing the government's interest in confinement. Second, the Defendant argues that the Eighth Amendment prohibition against cruel and unusual punishment compels release. Third, the Defendant argues that the Bail Reform Act requires his release as the circumstances have changed rapidly with the encroaching pandemic. Finally, the defense claims that there are conditions of release available to insure the community's safety, including confining himself at home (there is no indication of what home is, where it is, or who else lives there), that he check in with the use of voice Id, that he abide by a curfew with location monitoring and that he use face to face computer meeting systems to meet with his pretrial officer. The Defendant concludes that he is not safer in prison during this pandemic due to some reported cases of COVID-19 in prisons across the country, his belief that there is a shortage of sanitary supplies in the facility, and other measures that the facility is failing to take to limit the spread of the corona virus.

The Government responds that the Court should deny the Motion for several reasons. First, they argue release is not necessary to Defendant's defense. It contends that Defendant's attorney is permitted contact visits at NSDC, and even if it would be unwise for counsel to meet in person there, it would be equally unwise to meet if Hill was out of custody for the same reasons. Further, the Government argues that Hill has the ability to both video conference and speak telephonically with his attorney, and that the facility has assured inmates that they have free access to unmonitored calls with their attorney. See, *United States v. Cox*, 2:19CR00271-RFV-VCF (D. Nev. 219) (ECF No. 32 at No. 9)

Second, the Government argues that there is no compelling reason for release pursuant to Section 3142(i). The Government alleges that Hill is healthy and not part of a high risk population and that there is no evidence that Hill is somehow part of an at risk population risk simply because he is in custody. The Government further argues that NSDC has taken extensive precautions to limit Hill's exposure and outlines those precautions in their response. (ECF No. 22 pp. 7-8). Finally, the Government argues that Hill's request is not for temporary release but for outright release given that he has not considered any parameters for how his release would be temporary. The Government concludes that Hill has not carried his burden under 18 U.S.C. §3142(i) and therefore his motion for temporary release should be denied.

The defense replied and requested an evidentiary hearing because they allege there are material disputes over the current conditions and protocols in place at NSDC. The defense alleges that recent information reflects that at least one inmate at NSDC has tested positive for COVID-19. The reply then proceeds to outline how the pandemic has swept through the United States and specifically the Bureau of Prisons. The reply concludes that this Court has the inherent authority to protect human rights of the individuals detained pretrial and that this Court should release Hill given the potential that he might be infected with COVID-19 as a result of the conditions inside NSDC.[1]

---

[1] The defense filed a supplement to its motion providing what it felt was further justification for its request for an evidentiary hearing (ECF No. 24). The Court is not persuaded by this supplement that an evidentiary hearing is necessary for the determination of this motion.

## II.     LEGAL STANDARD

The Bail Reform Act of 1984 mandates that every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). If the Court finds the defendant poses a danger to public safety or a flight risk, the Court may order the defendant detained pending trial. 18 U.S.C. § 3142(f). Section 3142(i) permits a judicial officer to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Courts have used this provision "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *United States v. Clark*, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *see also United States v. Buswell*, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). Most courts addressing a motion for temporary release under § 3142(i) have done so in the context of evaluating the necessity of the defendant assisting with preparing his or her defense. *Clark*, 2020 WL 1446895, at *2; *see, e.g., United States v. Cecerle*, 2014 WL 31674, at *4 (D. Nev. Jan. 3, 2014); *United States v. Dupree*, 833 F.Supp. 2d 241, 247 (E.D.N.Y. 2011); United States v. Jeffries, 2011 WL 182867, at *4 (E.D.Tenn. Jan. 20, 2011); *United States v. Hazelwood*, 2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011). Courts considering whether pretrial release is "necessary under § 3142(i) have considered: (1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing while incarcerated. *Cecerle*, 2014 WL 31674, at *4.

Relatively little guidance exists about what qualifies as a "compelling reason" for temporary release under § 3142(i). Some courts have considered a defendant's serious medical condition compelling. *See, e.g., United States v. Rebollo-Andino*, 312 Fed.App'x 346, 348 (1st Cir. 2009) (noting that defendant could seek temporary release under § 3142 for medical reasons).

Courts typically grant relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see e.g., United States v. Scarpa*, 815 F.Supp. 88 (E.D.N.Y. 1993) (permitting the defendant's release under the 24-hour guard of the U.S. Marshal Service at his own expense because of traumatic gunshot injury and terminal AIDS diagnosis and correctional authorities could no longer manage his medical conditions); *United States v. Cordero Caraballo*, 185 F.Supp. 2d 143, 144-47 (D.P.R. 2002) (ordering release of defendant who sustained multiple gunshot wounds, was partially paralyzed, could not walk, lost some arm function, who required the supervision of 4-5 contracted security guards on a daily basis, where Bureau of Prisons could not provide required medical care).

### III.     DISCUSSION

The Court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents, particularly within the jail and prison setting. The rate at which COVID-19 is spreading and affecting communities around the world is alarming. Governor Steve Sisolak declared a State of Emergency in Nevada on March 12, 2020. Nevada's K-12 schools have been closed since March 16, 2020. Most unprecedented, casinos have announced complete closure of their properties. On March 20, 2020, Nevada's governor issued an order closing all non-essential business to the public and pleading for individuals to stay in their homes.

This Court has also taken measures to protect the public, staff, and litigants. *See* General Order 2020-02 and Temporary General Orders 2020-03, 2020-04 and 2020-05. The DOJ also announced it may investigate and prosecute individuals who intentionally spread the virus, referred to as a "biological agent" and potentially implicating terrorism-related statutes. As of the date of this Order, one case has been reported at NSDC, located in Pahrump, Nevada, which is where Defendant is currently detained. That individual has been quarantined and it does not appear that the virus has spread to anyone else in the facility.

#### a. Constitutional Basis for Temporary Release

Defendant bases his temporary release request, in part, on the Fifth and Eighth Amendments to the U.S. Constitution. In evaluating whether a condition of pretrial detainment violates the Fifth

Amendment, the question is whether the condition amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The United States Supreme Court has stated that if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  *Id*. at 539; *see also Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (applying same rule).  Thus, the question before this Court is whether detaining Defendant is reasonably related to a legitimate government objective.

This Court finds that Defendant's detention is reasonably related to legitimate government interests, namely, protecting the community and ensuring his appearance at trial as outlined in its original detention order.  (ECF No. 13).  The Court does not find that any of the grounds for detention have changed.  The recent COVID-19 pandemic does not change the analysis under the Fifth Amendment's Due Process Clause.

Similarly, the Court does not find that the analysis under the Eighth Amendment supports temporary release given all of the grounds for detention and no evidence that NSDC is unable to provide sufficient medical treatment to Defendant if he were to contract COVID-19 while in custody.  There is also no evidence that Defendant has a higher risk of contracting COVID-19 in custody than when released, as proposed, to meet the deliberate indifference to medical needs standard.  Therefore, the Court does not find any constitutional basis supports Defendant's temporary release request.

### b. Bail Reform Act Basis for Temporary Release: Compelling Reason or Preparation of Defense

A defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation.  *Clark*, 2020 WL 1446895, at *3.  Instead, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary.  *Id*.  The Court will evaluate the following four factors: (1) the original grounds for Defendant's pretrial detention; (2) the specificity of Defendant's stated COVID-19 concerns; (3) the extent to which the proposed

release plan is tailored to mitigate or exacerbate other COVID-19 risks to Defendant; and (4) the likelihood that Defendant's proposed release would increase COVID-19 risks to others. *Id*. The Court will not necessarily weigh these factors equally, but will consider them in their entirety to determine whether a "compelling reason" exists such that temporary release is necessary in the instant case. *Id*.; § 3142(i). Here, all of the factors relevant to the Court's analysis of the compelling reason basis for temporary release weigh in favor of denying release.

### i. The Original Grounds for the Defendant's Pretrial Detention

The Court finds that the grounds for its detention decision still apply. There has been no change to the reasons that the Court relied on for its original detention decision. Those reasons were extensive and voluminous and were outlined in the written order of detention pending trial (ECF No. 11). Those reasons are extremely persuasive to the point where the Court did not even consider attempting to try to fashion conditions that might address the reasons for detention. If this Court were to release Hill given the charges, his background and criminal history, and all of the other facts and circumstances that the Court considered in detaining him simply because of the corona virus, then the Court may as well issue an order releasing all of the defendants currently being detained at NSDC as a result of the corona virus.

### ii. The Specificity of the Defendant's Stated COVID-19 Concerns

The Court agrees with the Government that Defendant's stated COVID-19 concerns are not specific enough to pass the line beyond pure speculation. Defendant does not even claim to have a physical condition which makes him more susceptible to COVID-19. Indeed, Hill is a 45 year old white male who described his health as good when interviewed by Pretrial Services in February 2020. Defendant submits no specific COVID-19 risk; rather, his arguments are speculative and generalized and do not favor release. *See Sanders*, 2020 WL 1528621, at *5 (motion for temporary release denied where defendant asserted no specific personal health risk factor).

Further, Defendant cannot predict the extent to which COVID-19 cases might increase at NSDC. Nor can he predict the extent to which he may be exposed to the virus if allowed to live in Las Vegas. Defendant also cannot predict how NSDC might respond to an outbreak any more

accurately than many Americans can predict how their local hospitals might respond. While inmates may not be able to fully adhere to optimal social distancing guidelines, these circumstances are generalized to all individuals in the prison system and are not unique to Defendant. The Court, however, "cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee." *United States v. Fitzgerald*, 2020 WL 1433932, at *2 (D.Nev. March 24, 2020).

Moreover, the Court does not agree with Defendant's conclusory statements that NSDC is not utilizing proper protocols to ensure a COVID-19 outbreak does not occur. In fact, there is only one reported COVID-19 cases at NSDC and the facility has appeared to contain it to that one individual. There is also no evidence that NSDC does not have the proper sanitation supplies or medical treatment ready if Defendant were to contract COVID-19. As such, Defendant's speculation that he might contract COVID-19 because of the conditions in the facility does not support his argument for temporary release.

### iii. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 Risks

Additionally, the Court finds that the Defendant's proposed release plan to be released to home confinement with use of voice ID, curfew with location monitoring technology, use of face to face computer meeting systems, and abstaining from the use of controlled substance fails to mitigate his flight risk and danger to the community. Defendant offers no evidence to explain how the proposed living situation mitigates the risk of infection. For example, Defendant fails to explain who else has or will live in or frequent the home where he is staying or identify any screening practice or concrete COVID-19 precautions taken there. Likewise, the Defendant offers nothing regarding who lives at the home, who might come in and out of the home, or whether any individuals who might live there have been infected or exposed to the COVID-19 virus. Defendant therefore offers nothing more than mere speculation that home detention would be less risky than detention at NSDC, which has screening practices and other reasonable COVID-19 precautions in place. Finally, the facility has only had one inmate test positive for COVID-19 and has taken measures to isolate that individual from the rest of that population.

In contrast, if Defendant remains at NSDC, he has access to medical care should he become ill. NSDC has ample motivation to prevent any outbreak and, even if an outbreak occurs, to contain and manage it for the well-being of all involved. The record is void of information suggesting NSDC would be unable to render appropriate medical treatment to Defendant if he became ill. To the contrary, the Court is convinced that NSDC has established a comprehensive plan to manage the facility during the pandemic. The facility has demonstrated this by isolating the one individual who has tested positive for the virus (an individual who was brought into the facility with the virus and was immediately quarantined) and no further infections have occurred. Thus, the Court finds that the Defendant's unexplained, conclusory allegations regarding NSDC's inability to manage the care of inmates during the pandemic does not rise to the level of justifying temporary release based solely on COVID-19 concerns.

### iv. The Likelihood that Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others

Finally, the likelihood of Defendant's proposed release increasing COVID-19 risks to others is high. There are no assurances that Defendant would comply with the Governor's shelter in place order and not violate conditions of release, as Defendant has in the past. *See Clark*, 2020 WL at 1446895, at *7. Given the Section 3142 considerations discussed previously, the Court believes Defendant will likely violate any conditions of release it may impose if it were to issue a temporary release order. As another Court recently observed, "[w]hile the location monitoring that [defendant] proposed may offer useful information about where he is, it provides little useful information about what he is doing." *United States v. Martin*, 2020 WL 1274857, at *4 (D.Md March 17, 2020). Here, Defendant has been unable or unwilling to remain law-abiding in the past. The Court has no reason to believe he would suddenly become compliant now.

Furthermore, supervising a high-risk offender out in the community will place Pretrial Services officers at a heightened risk of contracting the virus. "[L]ocation monitoring is not a limitless resource, nor is its installation and monitoring by the United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given current recommendations regarding implementation of social distancing." *Id*.

For all of the reasons previously summarized regarding Defendant being a flight risk and danger to the community, it is highly likely that the Court would need to expend resources to apprehend him when temporary release period ended and the Court does not find GPS monitoring to be a viable option at this time.

In conclusion, Defendant has not established a compelling reason sufficient to persuade the Court that temporary release is necessary. None of the factors that the Court considered weighed in Defendant's favor. Defendant's arguments regarding the risk of outbreak at NSDC are nonspecific to him and are speculative at best. Indeed, Defendant's generalized arguments about risk apply equally to every detainee at NSDC. Additionally, Defendant has failed to demonstrate that his proposed release plan would alleviate his overall COVID-19 risks. The Court further finds that Defendant's proposed release plan would place Pretrial Services officers at risk in supervising him and, when the temporary release inevitably ends, other law enforcement officers and the facility would be placed at risk in re-apprehending Defendant after he has had ample opportunity for contamination. Therefore, Defendant has failed to demonstrate a compelling reason for temporary release.

### v. Necessary for Preparation of the Defense

The Court also does not agree that Defendant's temporary release is necessary for the preparation of his defense. Courts considering whether pretrial release is necessary for preparation of defense have analyzed: (1) the time and opportunity the defendant has to prepare for the trial and participate in his defense; (2) the complexity of the case and volume of information; and (3) expense and inconvenience associated with preparing for trial while incarcerated. *Cecerle*, 2014 WL 31674, at *4. These typical considerations, however, are not necessarily relevant to the claims made by defendants seeking release due to COVID-19 concerns.

The Court understands that there are reasons that Defendant's counsel may not wish to conduct in person visits at NSDC, but those same reasons would apply to in person visits if he was released. Plus, if he was released, he would not likely have access to video conferencing. The Court also has no evidence that Defendant is being deprived of unmonitored telephone calls with his counsel. Considering all these circumstances, this Court does not find that Defendant's

temporary release is necessary to prepare his defense, especially since his trial is not scheduled until September of 2020. Therefore, this factor also weighs against temporary release.

### IV. CONCLUSION

Defendant has not met his burden of demonstrating a compelling reason that would justify temporary release, or that the circumstances necessitate temporary release for preparation of his defense. The Court also finds that the original detention decision is amply supported by the record and no circumstances warrant temporary release under the Fifth or Eighth Amendments.

**IT IS THEREFORE ORDERED** that Defendant Steve Hill's Emergency Motion for Temporary Release Under 18 U.S.C. § 3142(i) Due to COVID-19 Pandemic (ECF No. 20) is **denied**.

DATED: April 27, 2020

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE